SKIPPY, INC., Plaintiff,

v.

LIPTON INVESTMENTS,
INC., Defendant.

No. CIV.A. 02–1227–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 20, 2002.

---

Mary Helen Sears, The M.H. Sears Law Firm Chtd., Washington, DC, for Plaintiff.

William Mack Webner, Sughrue, Mion, Zinn, Maepeak & Seas, LLC, Washington, DC, for Defendant.

## *MEMORANDUM OPINION*

CACHERIS, District Judge.

This case is before the Court on Defendant's Motion to Dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

### I. Background

This case involves a Trademark Cancellation petition initiated by Plaintiff, Skippy, Inc. ("Plaintiff" or "SI"), seeking cancellation of Trademark Registration No. 504,940, which is currently held by Defendant Lipton Investments, Inc. ("Defendant" or "Lipton"). Registration No. 504,-940 is for the mark "Skippy" for peanut butter. Plaintiff asserts in the cancellation petition that the Registration was fraudulently procured and maintained. Specifically, Plaintiff alleges that Lipton's predecessor in interest, Rosefield Packing Co., failed to inform the Patent and Trademark Office (PTO) of the outcome of a controlling 1933 registration application and opposition proceeding.

On June 18, 2002, the Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office (TTAB) dismissed the petition with prejudice on grounds of *res judicata* and failure to bring the claim as a compulsory counterclaim. Plaintiff now petitions this Court to consider the application on the merits, and asks this Court to declare Registration No. 504,940 void and award Plaintiff any other relief as may be proper.

### II. Standard of Review

■ Appeal from an action taken by the TTAB is in the Court of Appeals for the Federal Circuit. 15 U.S.C. § 1071(a). However, under the provisions of 15 U.S.C. § 1071(b)(1), in lieu of an appeal a party may bring a civil action in a district court. 15 U.S.C. 1071(b)(1). In that civil action, the "court may adjudge... that a registration should be canceled, or such other matter as the issues in the proceeding require, as the facts in the case may appear." *Id.*

In reviewing a case under 15 U.S.C. § 1071(b), the court sits in a dual capacity. On the one hand, the court is an appellate reviewer of facts found by the TTAB. On the other hand, the court is a fact-finder based on new evidence introduced to the court. Review of new evidence is de novo. 3 McCarthy, § 21:21. The district court, must, however, afford deference to the fact-findings of the TTAB. *Id.* In 1999, the Supreme Court held in *Dickinson v. Zurko*, 527 U.S. 150, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999), that the proper standard of judicial review of findings of fact made by the PTO is the standard of the Administrative Procedure Act (APA), 5 U.S.C. § 706. *Zurko*, 527 U.S. at 165, 119 S.Ct. 1816. Although *Zurko* involved the Federal Circuit's review of a decision of the PTO, the Court's holding also has been applied to findings of fact made by the

TTAB. *See, e.g., On–Line Careline v. America Online, Inc.,* 229 F.3d 1080, 1085 (Fed.Cir.2000). Section 706 of the APA sets forth two separate standards of review: "arbitrary and capricious" and "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A),(E). The Federal Circuit has concluded that, after *Zurko,* it will review TTAB findings of fact for substantial evidence. *On–Line Careline,* 229 F.3d at 1085. Accordingly, because the Fourth Circuit has not addressed the issue, this Court will review the TTAB's findings of fact under the substantial evidence standard. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

### III. Analysis

The TTAB found, and Defendants argue in this Court, that Plaintiff's Cancellation Petition is barred by *res judicata* and failure to assert the alleged fraudulent procurement as a compulsory counterclaim in earlier litigation. Furthermore, Defendants assert that Plaintiff's claim is barred by the agreement executed in 1977, in which SI released Lipton's predecessor, CPC International, "from any and all claims which Skippy, Inc. may have had against [CPC] relating to [CPC's] use of the name 'Skippy.'" *Skippy, Inc. v. CPC Internat'l,* 1980 WL 30226, 210 U.S.P.Q. 589, 592 (E.D.Va.1980), *aff'd in part, vacated in part,* 674 F.2d 209, 216 U.S.P.Q. 1061 (4th Cir.1982), *cert. denied* (1982) ("*Skippy I*").

■ In *Skippy I,* the Plaintiff pled fraud in the procurement of Registration

No. 504,940, and both this court and the Circuit Court found that the Option Agreement released any such claims that SI had. *Skippy I,* 674 F.2d at 213–14. Plaintiff asserts, however, that the alleged fraud argued by Plaintiff's counsel in *Skippy I* is not the same fraud alleged in the Petition to Cancel and the current Complaint. Specifically, Plaintiff asserts that the fraud Plaintiff is currently asserting is evidenced by a 1954 memorandum written by E.F. Wenderoth, a patent lawyer who represented Defendant's predecessor. That memorandum details the 1933 proceedings in the TTAB, during which Defendant's predecessor, Rosefield, attempted to register the mark "Skippy" for peanut butter. Plaintiff opposed the registration, and Rosefield's application was denied on the basis of the "Name Clause" in the 1905 Trademark statute. Plaintiff asserts that the Court was not aware of the Wenderoth memorandum or its contents, and Plaintiff believes that had the court been so aware, a finding for Plaintiff would have been mandated in the 1980 litigation. However, Plaintiff has acknowledged that the Wenderoth memorandum was presented to the Court in *Skippy I* as an exhibit to Plaintiff's pleadings. (02–1571 Compl. ¶ 24).[1]

■ The doctrine of *res judicata* bars a second suit involving the same parties or their privies based on the same cause of action, after a prior adjudication on the merits. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). *Res judicata* bars not only those claims that were raised and fully litigated, but also "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the par-

---

1. In certain situations, the court may take judicial notice of public documents in related cases, *Ellis v. Cates,* 178 F.2d 791, 793 (4th Cir.1949). The Court believes this is such a situation, especially where Plaintiff has repre-

sented in case number 02–1571 that it will seek consolidation of the two actions, and Plaintiff refers multiple times to the Complaint in 02–1571 in its own pleadings.

ties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). Courts presume that litigants have "done [their] factual and legal homework" and raised all grounds arising out of the same facts in support of their claims. *Peugeot Motors of Am., Inc. v. Eastern Auto Distribs., Inc.*, 892 F.2d 355, 359 (4th Cir.1989) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 596 (7th Cir.1986)).

■ It is clear that Plaintiff's counsel was aware of the 1954 Wenderoth Memorandum at the time of *Skippy I*. Thus, Plaintiff's counsel could have raised the Memorandum in arguing fraudulent procurement of Registration 504,940, but did not. Accordingly, Plaintiff's current claim that Registration 504,940 was fraudulently obtained is barred by the *res judicata* effect of *Skippy I*.

■ Furthermore, Plaintiff's claim that Registration No. 504,940 was fraudulently obtained was required to be brought as a compulsory counterclaim in the TTAB opposition proceedings from 1982 to 1987, in which Defendant opposed Plaintiff's applications for trademarks on the basis of Registration No. 504,940 (final decision published at *Cpc Internat'l v. Skippy, Inc.*, 1987 WL 124285, 3 U.S.P.Q.2d 1456 (Trademark Tr. & App. Bd.1987)) and in the suit brought by Defendant in 1986 against Plaintiff for infringement of Registration No. 504,940 (final decision published at *CPC Internat'l v. Skippy, Inc.*, 651 F.Supp. 62 (E.D.Va.1986)).

Federal Rule of Civil Procedure 13(a) provides that:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter

of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Fed. R. Civ. p. 13(a). Plaintiff asserts that it knew the significance of the 1934 decision in 1984. (02–1571 Compl. ¶ 18). Thus, the claim was known to SI at the time it was served with the 1986 suit. In that suit, Lipton's predecessor, CPC International, sued Plaintiff and its president, Tibbetts, for infringement of Registration No. 504,940. Plaintiff's assertion that the Registration was fraudulently obtained was a compulsory counterclaim under Rule 13(a). Accordingly, such claim is now waived, and Plaintiff is barred from bringing the current cancellation action.

Furthermore, Under Trademark Rule 2.106(2)(i),

> [a] defense attacking the validity of any one or more of the registrations pleaded in the opposition [504,940 in this case] shall be a compulsory counterclaim if grounds for such counterclaim exist at the time when the answer is filed.... If grounds for a counterclaim are learned during the course of the opposition proceeding, the counterclaim shall be pleaded promptly after the grounds therefor are learned.

37 C.F.R. § 2.106(2)(i). Plaintiff asserts that it became aware of the significance of the Wenderoth memorandum in 1984, at which time the 1982 opposition proceeding was still ongoing. Thus, Plaintiff was required to bring a counterclaim for rescission at that time under 37 C.F.R. § 2.106(2)(i).

Plaintiff asserts that the compulsory counterclaim provision should not be given effect because it is inconsistent with 15 U.S.C. 1064(3), which permits the filing of a petition to cancel "at any time" if the registration was obtained fraudulently, and because of the important public interest in

having fraudulently obtained trademarks removed from the register. As support for such a proposition, Plaintiff notes that the TTAB has held that the equitable defenses of estoppel and laches are not available in claims of fraud. *See, e.g., Harjo v. Pro Football, Inc.,* 1994 WL 262249, 30 U.S.P.Q.2d 1828, 1831 (Trademark Tr. & App. Bd.1994). This Court will not vacate a Rule propagated and enforced by the TTAB on the basis of a policy statement, arguably dicta, in a TTAB decision. Although there may certainly be a public interest in removing fraudulently obtained registrations from the register, there is also a strong public interest in adjudicating parties' rights to a mark in one proceeding. This Court does not find the TTAB's enforcement of the compulsory counterclaim Rule unduly "harsh," as Plaintiff asserts, where, as here, Plaintiff was aware of the alleged basis for a cancellation but chose not to bring those allegations for *18 years.* Accordingly, Plaintiff is barred from bringing the current cancellation proceeding based on its prior failure to assert such a claim in the 1986 trademark infringement litigation and 1982–87 opposition proceedings.

■ Finally, Defendant argues that Plaintiff is contractually barred from contesting the Registration, according to the provisions of a release signed by Plaintiff's president, Ms. Tibbetts, in 1977. Plaintiff asserts that that release is invalid, as it was fraudulently obtained.

In *Skippy I*, Plaintiff asserted that the release was fraudulently obtained. In that proceeding, the District Court found that "[Plaintiff's] claim that the release was obtained by fraud or trickery lacks both evidentiary and legal support." *Skippy I,* at 213–14. The Fourth Circuit affirmed. *Skippy, Inc.,* 674 F.2d at 213. Plaintiff asserts that giving the 1980 decision *res judicata* effect would be "the height of

travesty," since Plaintiff alleges that it did not know the full substance and import of the 1934 decision at the time of *Skippy I.* However, as addressed above, Plaintiff's counsel was fully aware of the facts of the 1934 decision, and such information was submitted to the Court. The doctrine of *res judicata* bars all defenses and legal claims available to the party at the time of the litigation, no matter whether they were raised at that time. *Brown,* 442 U.S. at 131, 99 S.Ct. 2205. Accordingly, the validity of the release has already been determined by the Court, and Plaintiff is now barred from relitigating that issue. Thus, Plaintiff's cancellation provision is barred by the terms of the 1977 release.

## IV.  Conclusion

For the foregoing reasons, Defendant's motion to dismiss the Complaint will be granted. An appropriate Order will issue.